UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LENDSIE PAGE, individually as an aggrieved employee and on behalf of others similarly situated,

Plaintiff,

v.

LUXOTTICA RETAIL NORTH AMERICA, INC., an Ohio corporation; EYEXAM OF CALIFORNIA, INC., a California corporation; and DOES 1 through 100, inclusive,

Defendant.

No. 2:13-cv-01333-MCE-KJN

**MEMORANDUM AND ORDER**

Plaintiff Lendsie Page ("Plaintiff") moves to remand this putative class action case to state court for lack of subject matter jurisdiction. ECF No. 6. For the reasons stated below, Plaintiff's motion is GRANTED. ECF No. 6.

## BACKGROUND

On April 11, 2013, Plaintiff, individually as an aggrieved employee and on behalf of other aggrieved employees, filed a complaint against Defendants Luxottica Retail North America, Inc. ("Luxottica") and Eyexam of California, Inc. (collectively

"Defendants") in the Superior Court of the State of California, County of Solano. See ECF No. 2 at 21-41. On June 4, 2013, Plaintiff filed her First Amended Complaint ("FAC") alleging claims for various violations of state law: (1) unpaid overtime wages; (2) unpaid minimum wages; (3) unpaid full meal period premiums; (4) unpaid full rest period premiums; (5) waiting time penalties; (6) inaccurate wage statements; (7) penalties through the California Private Attorney General Act of 2004 ("PAGA"); and (8) engaging in unlawful business acts and practices. ECF No. 2 at 42-71, ¶¶ 54-109.

In the FAC, Plaintiff defines two classes of similarly situated persons. First, Plaintiff purports to represent the putative "Class," which she describes as "[a]ll persons who are or were employed by Defendants in a California retail location as an hourly-paid Eye Care Consultant and/or Eye Care Advisor within four years prior to the filing of this complaint until the date of certification." ECF No. 2 at 47, ¶ 23. Second, Plaintiff purports to represent a subclass of persons defined as "[a]ll persons who are or were employed by Defendants in a California retail location as an hourly-paid Eye Care Consultant and/or Eye Care Advisor within one year prior to the filing of this complaint until the date of certification." Id. at ¶ 24.

On June 4, 2013, Defendants filed a Notice of Removal, alleging that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). ECF No. 2. In support of that removal, Defendants submitted the declaration of Peggy Schwab, the Director of Human Resources Operations for Luxottica.[1] Schwab Decl. Removal, ECF No. 2-3, Schwab Decl. Opp., ECF No. 10-1. Ms. Schwab stated in her declaration that she reviewed a preliminary data analysis conducted by Luxottica and obtained information on periods of employment, rates of pay, and shift lengths for Defendants' employees during the alleged class period. Id. at 1. Based on this information, Defendants allege, and Plaintiff does not dispute, that the putative class size is 590 for waiting time penalties (ECF No. 24 at 6); 655 for non-compliant wage

[1] Plaintiff filed an objection to portions of this declaration. ECF No. 12-1. Given the Court's disposition in Plaintiff's favor, this objection is DENIED as moot.

statement penalties and PAGA penalties; and 1,183 (or a total of 60,964 work weeks) for all other claims. ECF No. 2 at 6-11, ¶¶ 14, 16, 18, 20, 24, 30.

On July 24, 2013, Plaintiff filed the instant Motion to Remand for Lack of Subject Matter Jurisdiction.[2] ECF No. 6. In their Opposition and Supplemental Brief, Defendants contend that the total amount in controversy is $12,505,583 to $15,830,293.[3] Those alleged totals are derived from unpaid minimum and overtime wages ($629,700); meal and rest period violations ($2,711,806 to $5,657,509); waiting time penalties ($1,237,867); inaccurate wage statements ($1,015,250); and PAGA penalties ($6,898,100). ECF No. 10 at 12-18, ECF No. 24 at 4-8.

## STANDARD

When a party brings a case in state court in "which the district courts of the United States have original jurisdiction," the defendant may remove it to the federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). The removal statute is "'strictly construed,' and a 'defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability.'" Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A., 761 F.3d 1027, 1034 (9th Cir. 2014). "A plaintiff who contests the existence of removal jurisdiction may file a motion to remand." Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014) (citing 28 U.S.C. § 1447(c)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

[2] On August 28, 2013, Defendants alerted this Court to the Ninth Circuit's decision in Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3rd 975 (9th Cir. 2013). ECF No. 11. On September 4, 2013, the Court ordered supplemental briefing in light of Rodriguez, ECF No. 14, but subsequently stayed this case pending the Ninth Circuit's disposition of Rodriguez's petition for rehearing en banc. ECF No. 15. On October 24, 2013, the Ninth Circuit denied Rodriguez's petition for rehearing en banc. Rodriguez, O. Den. Pet. for Reh'g En Banc, No. 13-56149, Docket. No. 36. The parties then filed supplemental briefs, ECF Nos. 20, 24, pursuant to this Court's February 24, 2014 Minute Order. ECF No. 19.

[3] In their Supplemental Brief, Defendants fail to include the higher end of their meal and rest period calculations ($5,657,509) in the total amount alleged. ECF No. 24 at 5, 8. However, when the higher estimates are included, the total amount in controversy is raised to $15,830,293.

Federal jurisdiction under CAFA has three elements: (1) there must be minimal diversity between the parties; (2) the proposed class must have at least 100 members; and (3) the amount in controversy must exceed $5,000,000. Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013) (quoting 28 U.S.C. § 1332(d)). In calculating the amount in controversy, a court must assume that the allegations in the complaint are true and that a jury will return a verdict for plaintiffs on all claims alleged. Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Moreover, the claims of class members may be aggregated to determine whether the amount in controversy requirement has been satisfied. Id.; 28 U.S.C. § 1332(d)(6). "[T]he [CAFA] statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the . . . proposed class and determin[ing] whether the resulting sum exceeds $5 million." Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013). In a CAFA case, "the proper burden of proof imposed on a [removing] defendant to establish the amount in controversy is the preponderance of the evidence standard." Rodriguez, 728 F.3d at 977 (holding that the "legal certainty" test was no longer viable).

Under CAFA, the proponent of federal jurisdiction bears the burden of establishing removal jurisdiction. Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006). Thus, Defendants must establish that this Court has jurisdiction over Plaintiff's claims. Id. In order to determine whether the removing party has met this burden, a court may consider the contents of the removal petition and "summary-judgment-type evidence." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).

## ANALYSIS

Plaintiff does not dispute that this matter has been pled as a class action involving more than 100 class members or that minimal diversity exists between the parties.

Accordingly, the only question before the Court is whether Defendants have established by a preponderance of the evidence that the amount in controversy exceeds $5 million. See 28 U.S.C. § 1332(d)(6); Rodriguez, 728 F.3d at 977.

Defendants argue that the amount in controversy is at least $12,884,590 to $15,830,293 based on the seven alleged violations of the California Labor Code. Plaintiff argues Defendants fail to meet their burden because Defendants' assertion is based entirely on assumptions and speculative calculations. The Court agrees. Under the preponderance of the evidence standard, Defendants have failed to satisfy their burden.

In determining whether Defendants have met their burden, it is only necessary to consider Defendants' calculations for five of Plaintiff's seven labor claims: rest and meal break violations, inaccurate wage statement violations, waiting time penalties, and PAGA penalties. Without the estimates for these claims, Defendants are unable to reach the $5 million CAFA threshold.

**A. Missed Meal and Rest Breaks Claims**

Plaintiff's third and fourth claims allege that Defendants failed to provide meal and rest breaks. ECF No. 2 at 57-58, ¶¶ 69, 76. Plaintiff further claims that Defendants "had a policy and/or practice of failing to staff their stores adequately" and that Plaintiff and the putative class members suffered missed, short, interrupted and/or late meal periods as a result of this "insufficient staffing." Id. Focusing on the "policy and/or practice" language, Defendants contend that there is $2,403,339 in controversy for missed meal periods and $3,254,169 at issue for missed rest periods. ECF No. 24 at 9 n.4.

The primary issue here is the violation rate, or the frequency of missed meal and rest breaks. The missed meal period claim applies only to work shifts over five hours, see Cal. Lab. Code § 512(a), and the missed rest breaks claim applies only to shifts over three and one-half hours or longer. See Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1028 (2012). The FAC makes no allegations with regard to frequency, and only states that Defendants "had a policy and/or practice" of insufficient staffing,

which resulted in employees missing meal and rest periods. Based on this language, Defendants argue that 100 percent of the meal and rest breaks are at issue and can be used in determining the total amount in controversy. ECF No. 10 at 9. There are several problems with Defendants' reasoning and calculations in this regard.

As a preliminary matter, Defendants omit key information in attempting to explain their calculations. Defendants calculate the amount in controversy for meal break violations by taking the product of 60,694 work weeks, an $11.17 average pay rate, and 5 shifts per week. Then, to account for the number of shifts eligible for meal or rest breaks, Defendants reduce that number to 70.9 percent for meal breaks and 96 percent for rest breaks. ECF No. 24 at 5 n. 4. These estimates are problematic because Defendants assume that each employee worked five shifts per work week without providing any evidence to support this assumption. Unlike other CAFA cases, where Defendants present affidavits to support using a five-day work week, Defendants in the present case provide no such evidence. See Giannini v. Nw. Mut. Life Ins. Co., No. C 12-77, 2012 WL 1535196, at *2 (N.D. Cal. April 30, 2012). Without any evidence of the number of shifts per week, the Defendants' estimates of the percentage of shifts that were subject to a meal or rest break lack any meaning and render their calculations purely speculative.

Even setting aside this fundamental flaw, Defendants' calculations still overestimate the amount in controversy. Plaintiff alleges that Defendants had a "policy and/or practice" of understaffing their stores, but she does not give any indication that they had a specific "policy and/or practice" of discouraging or deterring employees from taking meal or rest periods. This distinction differentiates this case from the precedent cited by Defendant where employees were "routinely . . . forced" to work without a mandatory meal or rest break and were "actively discouraged" from taking any breaks. See Giannini, F. Supp. 2d at *3. Here, there is no such allegation of a widespread policy to specifically prevent employees from taking breaks. Rather, Plaintiff alleges that the missed breaks were a peripheral result of the understaffing. Since Defendant provides

no other evidence to justify its estimates, the meal and rest break violation estimates cannot be used in meeting the amount in controversy.[4]

**B. Itemized Wage Statement Penalties**

Plaintiff's sixth claim alleges Defendants failed to provide employees with timely and accurate itemized wage statements as required by section 226(a) of the California Labor Code. ECF No. 2 at 60, ¶ 88-89. Defendants calculate the value of this claim as $1,015,250. ECF No. 10 at 16. Again, Defendants allege a sweeping penalty without sufficient evidence.

To support their estimate, Defendants rely on the declarations of Peggy Schwab, the Director of Human Resources Operations for Luxottica. ECF No. 2-3, ECF 10-1. Schwab declares that the estimated 655 putative class members worked approximately 16 pay periods during the one-year statutory period. Schwab Decl. Removal, ECF No. 2-3, at ¶ 6. In their estimate, Defendants assume, without evidentiary support, that every wage statement issued over the 16 pay periods was incorrect. Based on that assumption, Defendants argue that Plaintiff is entitled to recover $1,550 for each employee ($50 for the initial pay period, then $100 for each of the 15 subsequent pay periods), which results in a total of $1,015,250 ($1,550 x 655 employees). Ms. Schwab's declaration, without more, is not sufficient evidence to support their estimate.

Courts have been skeptical of high CAFA estimates that rely solely on declarations with non-specific human resource data. See Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013); Emmons v. Quest Diagnostics Clinical Laboratories, Inc., No. 1:13-cv-0474, 2014 WL 584393, at *5-7 (citing Weston v. Helmerich & Payne Int'l Drilling Co., No. 13-cv-01092, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 16, 2013)). For instance, in Garibay, the Ninth Circuit was not persuaded by Defendants' declaration that "set[] forth only the number of employees during the

[4] Additionally, Defendants improperly aggregate the meal and rest period violations, even though Plaintiff is only able to recover for one additional hour of pay regardless of whether she was denied both a rest and meal period during that day. See Cal. Labor Code § 226.7; Roth v. Comercia Bank, 799 F. Supp. 2d 1007, 1120 (C.D. Cal. 2010) ("[D]efendants' calculation for meal and rest period violations essentially doubles the amount realistically recoverable under the statute.").

relevant period, the number of pay periods, and general information about hourly employee wages." 539 F. App'x. at 764. The court found that the estimates depended on "speculative and self-serving assumptions" and held that the proffered evidence was insufficient under the preponderance standard. Id. Similarly, in Emmons, Defendants alleged at least one violation per pay period for each employee, and relied on a declaration that provided the number of putative class members, average number of work weeks during the class period, and the average hourly wage of the employees. 2014 WL 584393, at *5-7. This Court found that the generalized statements in the declaration did not justify the use of maximum violation rates and therefore rejected their estimate for itemized wage statement violations. Id. at *7.

Here, just as in Garibay and Emmons, the only evidence Defendants provide to support their estimate is a declaration that gives the class size and the number of pay periods during the statutory period. Without supporting evidence, Defendants merely speculate that each class member suffered at least one wage statement violation during each and every pay period. Despite this lack of evidence, Defendants contend that their estimate is conservative, since they only assume one violation per employee over each two-week pay period (or $1,550 per employee). True, Defendants could have alleged the statutory maximum per employee of $4,000, but the fact they could have assumed a higher amount does not make their estimate any less speculative. See Garibay, 539 F. App'x at 764 (disavowing the assumption, without proper evidence, that "every single member of the class would be entitled to recover penalties for every single pay period"); Emmons, 2014 WL 584393, at *5-7 (discarding as speculative an estimate that assumed each wage statement for every employee had at least one violation).

The declaration of Ms. Schwab, on its own, is not enough to establish that each class member suffered at least one wage statement violation during each and every period throughout the statutory period. Accordingly, the Court discards, as speculative, this figure in its entirety for purposes of calculating the amount in controversy.

///

**C. Waiting Time Penalties**

Plaintiff's fifth claim alleges that Defendants failed to pay putative class members their earned wages in a timely manner upon their termination. Those wages include overtime wages, minimum wages, and meal and rest period premiums. ECF No. 2 at 59, ¶ 83. Under section 203 of the California Labor Code, such a violation results in a penalty of one full day's wages for each day that the unpaid wages remain outstanding (up to 30 days). Defendants argue that all putative class members are entitled to the full 30 days of waiting time penalties, and that the value of this claim is at least $1,237,867.20. ECF No. 10 at 20. Defendants' maximum penalty estimate relies on two pieces of evidence: Plaintiff's statements in her complaint and the declaration of the human resources director. As explained below, this evidence is insufficient to support their estimate of maximum penalties.

First, in assuming the maximum amount allowed, Defendants rely on Plaintiff's statement in her complaint that "the statutory penalty wages for each day [Plaintiff and class members] were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum." Defendants' assumption that each employee is entitled to recover the full 30-day maximum penalty has no basis in the allegations of the Complaint or the proof submitted by Defendants. Plaintiff's complaint alleges that class members may be entitled to penalties for "up to" the 30-day maximum, not that each class member is entitled to the maximum penalty for all 30 days.

Furthermore, the Ninth Circuit and courts in this district have rejected the assertion of maximum wage penalties where such estimates are unsupported by sufficient evidence. See Garibay, 539 F. App'x at 764; Weston, 2013 WL 5274283, at *6. Here, Defendants fail to provide supporting evidence for their assumption that every former employee suffered a wage violation and that each of those employees was not paid for the violations for a full 30 days after termination. Defendants' only supporting evidence is the declaration of Ms. Schwab, which does not allege any specific facts that the putative class members are entitled to the maximum penalties. Because Defendants

lack sufficient underlying evidence for alleging maximum penalties, the estimates are merely speculative. Accordingly, the Court declines to include the estimates for waiting time penalties in the amount in controversy.

**D. Civil Penalties ("PAGA")**

Plaintiff also seeks to recover penalties under the Private Attorneys General Act of 2004 ("PAGA"). Cal. Lab. Code § 2699. Defendants allege that at least $6,898,100 is in controversy for this claim. For the following reasons, the Court disagrees with the estimate and lowers the amount accordingly.

Under PAGA, an "aggrieved employee" is able to recover additional civil penalties for violations of the California Labor Code. Cal. Lab. Code § 2699(a). PAGA penalties for unpaid minimum wages and meal period violations are $50 for each initial violation and $100 for any subsequent violation, Cal. Lab. Code § 558; penalties for wage statement violations are $250 for the first violation and $1,000 for each subsequent violation, Cal. Lab. Code § 226(a); and penalties for the other employment violations alleged by Plaintiff are $100 for each initial violation and $200 for each subsequent violation, Cal. Lab. Code § 2699(f)(2). As required by law, 75 percent of the civil penalties recovered go to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." Id. § 2699(i).

In reaching their estimate of $6,898,100 in PAGA penalties, Defendants allege that for every claim asserted by Plaintiff, there was at least one PAGA violation for each putative class member (655 putative class members) during each pay period (16 pay periods). Thus, Defendants calculated the PAGA penalties by multiplying the first violation amount for each of Defendants' six alleged labor violations ($50, $100, or $250) by the estimated size of the putative class (655) by the estimated pay periods for the putative class (16 pay periods). ECF No. 2 at 11-13, ¶¶ 29-36. Defendants' calculations are problematic for two reasons.

First, Defendants again put forth no evidence in support of their assertion that each putative class member is entitled to PAGA penalties for every alleged violation.

Defendants do not attempt to make a conservative calculation of the PAGA damages at issue but again assume that every class member is entitled to penalties for every pay period throughout the year.

Second, Defendants assume that the total PAGA recovery should be considered in determining the amount in controversy. District courts are split over whether the full amount of PAGA penalties sought from a defendant should be included when calculating the amount in controversy or only the 25 percent that would ultimately be paid to the aggrieved employee in a CAFA case. Compare Pagel v. Dairy Farmers of Am., Inc., 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (holding that under the "either viewpoint rule" the full PAGA penalty amount should be considered when calculating the amount in controversy in CAFA cases because it is the amount that Defendants will pay if the suit succeeds) with Main v. Dolgen Cal., LLC, No. 2:13-cv-01637, 2013 WL 5799019, at *3 (E.D. Cal. Oct. 28, 2013) (citing diversity jurisdiction class action case Urbino v. Orkin Servs. of Cal., Inc., 726 F.3d 1118, 1122-23 (9th Cir. 2013) for the proposition that Defendants must reduce their PAGA penalty calculation to reflect the 75 percent paid to the state). Consistent with Eastern District precedent, this Court holds that the 75 percent of PAGA penalties paid to the state should not be included in the amount in controversy calculation. By reducing Defendants' PAGA calculations by 75 percent, the amount in controversy for this claim is lowered to $1,724,525.

Even assuming Defendants' remaining calculations are correct, the amount in controversy is only $2,354,225 ($1,724,525 for PAGA penalties + $629,700 for minimum wage and overtime violations). As a result, Defendants fall short of the $5 million CAFA jurisdictional threshold. Accordingly, the Court finds Defendants have not demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, and, therefore, this Court lacks jurisdiction over the case.

///

///

///

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Remand (ECF No. 6) is GRANTED. The Clerk of the Court is directed to remand the case to the Superior Court of the State of California for the County of Solano.

IT IS SO ORDERED.

Dated: March 3, 2015

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT